UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

CIVIL ACTION NO. 24-CV-222-LM-TSM

CALDERIA, LLC )
and )
GREGORY B. RICHARDS )
and )
VANDERBURGH HOUSE, LLC )
Plaintiffs, )
v. )
)
CITY OF CLAREMONT )
Defendant )
)

**<u>DEFENDANT'S MOTION TO DISMISS</u>**

NOW COMES Defendant, the City of Claremont (the "City"), by and through its attorneys, Wadleigh, Starr & Peters, P.L.L.C., and respectfully moves the court to dismiss this action pursuant to F. R. Civ. P. 12(b)(6). In support whereof, Defendant states:

## INTRODUCTION

Plaintiffs wish to continue to operate or reside in an unlawful boarding house without performing necessary life safety code improvements. The City has repeatedly informed Plaintiffs that they either need to perform the code improvements, file an appeal, or request a variance from the ZBA. Plaintiffs' failure to request a reasonable accommodation from those City officials who are authorized to do is the cause of their alleged injuries, not the City's conduct. Nor have City's actions in courteously enforcing the law been extreme or outrageous. Since Plaintiffs have failed to state a valid claim for discrimination or the infliction of emotional distress, this action must be dismissed.

## FACTUAL BACKGROUND

1. Plaintiff Vanderburgh House, LLC ("Vanderburgh") has unlawfully operated a boarding house, as that term is defined under Claremont Zoning Ordinance, at a property owned by Plaintiff Calderia, LLC located in the City of Claremont at 189 Broad Street (the "Property") since at least 2022. See Exhibit E to Complaint (Doc. 1-5).

2. On October 20, 2022, the City of Claremont put Vanderburgh on notice that its operations of renting out rooms constituted a boarding house and was unlawful without code improvements and obtaining a new occupancy permit. See Exhibit E to Complaint (Doc. 1-5).

3. Nevertheless, Vanderburgh continued to unlawfully operate its boarding house.

4. On May 8, 2024, the City issued an order to vacate pursuant to RSA 147:16-a citing Vanderburgh's continued unlawful operation of a boarding house. See Exhibit A to Complaint (Doc. 1-1).

5. The Order informed Plaintiffs that they had the right to contest the Order in circuit court pursuant to RSA 147:16-a. Id. Plaintiffs did not exercise this right.

6. Pursuant to RSA 676:5, Plaintiffs had the right to appeal the City's zoning determination that they were operating a boarding house to the ZBA. Plaintiffs did not exercise this right.

7. On the evening of June 7, 2024, City staff members held a meeting to discuss the issues with the Property. Complaint Exhibit E (Doc. 1-5). The City invited Vanderburgh to attend the meeting, but Vanderburgh chose not to attend. Id.

8. James G. Feleen, the City's attorney, sent a letter to Vanderburgh on June 11, 2024, informing it once again that by having bedrooms with individual locks and advertising weekly rent, it appears to be a boarding house under the Claremont Zoning Ordinance. Id. Mr. Feleen

informed Vanderburgh of the steps it would need to take to either qualify the Property as a single-family residence or qualify to operate the Property as a boarding house, including obtaining either a variance for operating as a single-family residence, or a change of use and new occupancy permit for operating as a boarding house. Id. Mr. Feleen stated that the City "stands ready to assist if you decide to try and establish a sober living residence [at the Property]." Id.

9. The Plaintiffs did not attempt to proceed with any of the steps detailed in Mr. Feleen's letter of June 11, 2024.

10. On June 24, 2024, Plaintiffs' counsel emailed Mr. Feleen, disputing the City's position and claiming discrimination. Complaint ¶20 (Doc. 1). He threatened that if the City Attorney did not grant a zoning variance[1], he would pursue a lawsuit against it. Id.

11. Having taken no other steps to either comply with the City's requests or to seek relief in any of the other manners available, the Plaintiffs' Complaint was filed on July 23, 2024.

## LEGAL STANDARD

12. In reviewing a motion to dismiss, courts determine if the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). For the purposes of this review, the court "accept[s] the facts alleged in the Complaint as true, drawing all reasonable inferences in favor of the [plaintiff]." Bessette v. Avco Fin. Serv., Inc., 230 F.3d 439, 443 (1st Cir. 2000). While courts will "construe all well-pleaded allegations liberally at this stage of the proceedings, [they] do not credit conclusory assertions, subjective characterizations, or outright vituperation." Barrington Cove Ltd. P'ship v. R.I. Housing and

[1] Pursuant to RSA 674:33, only the ZBA and not the City Attorney has authority to grant a zoning variance.

Mortg. Fin. Corp., 246 F.3d 1, 5 (1st Cir. 2001). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft, 556 U.S. at 678.

## ARGUMENT

13. Plaintiffs claim that they have requested a reasonable accommodation from the City of Claremont pursuant to the Fair Housing Act ("FHA") and the Americans with Disabilities Act ("ADA"), that this request was denied, and thus the City discriminated against them. However, these claims fail because Plaintiffs have not made a request for reasonable accommodation to the City, despite instructions from the City on how to do so, and thus the City cannot and has not refused to make such reasonable accommodation. Thus, absent both direct evidence of discrimination or a City decision evidencing discrimination, Plaintiffs' claims fail as they have not stated a *prima facie* case for failure to accommodate or other discrimination under either law.

14. To demonstrate a *prima facie* case of failure to accommodate pursuant to the FHA, Plaintiffs must first show that they are handicapped as defined by the statute. Kris v. Dusseault Family Revocable Trust, 594 F.Supp.3d 344, 352 (D.N.H. March 23, 2022); 42 U.S.C.A. § 3602(h). Here, Plaintiffs claim they are disabled by virtue of recovering from substance abuse or are associated with those so disabled. Complaint ¶6 (Doc. 1). Second, Plaintiffs must show that the City knew or should reasonably have known of the handicap. Kris, 594 F.Supp.3d at 352. It is undisputed that the City was aware that Plaintiffs were operating a sober living boarding house. Complaint Exhibit E (Doc. 1-5).

15. Third, Plaintiffs must show that they "requested a particular accommodation that is both reasonable and necessary to allow [them] an equal opportunity to use and enjoy the housing in question." Astralis Condo. Ass'n v. Sec'y, HUD, 620 F.3rd 62, 67 (1st Cir. 2010). Here, Plaintiffs have not pled facts that reflect they made such a request to the appropriate authorities. The

accommodation Plaintiffs appear to have desired was to allow their boarding house, as defined by the Claremont Zoning Ordinance, to instead be defined as a single-family home. The only City entity with the authority to make that determination and choose whether or not to grant such a variance is the ZBA. RSA 674:33; see Prindable v. Assoc. of Apartment Owners of 2987 Kalakaua, 304 F.Supp.2d 1245, 1258 (D. Hawai'i July 11, 2003) (the "Defendant[] must [be given] an opportunity to make a final decision with respect to [the Plaintiff's] request, which necessarily includes the ability to conduct a meaningful review of the requested accommodation to determine if such an accommodation is required by law."), citing Bryant Woods Inn, Inc. v. Howard County, 124 F.3d 597, 602 (4th Cir. 1997).

16. However, instead of directing its request to the ZBA, Plaintiffs requested accommodation from, variously, the Chief Building Official and Health Officer, the Code Enforcement Officer, and the City's attorney. Complaint at ¶20 (Doc. 1), Exhibits B-C (Doc. 1-2, 1-3). None of these officials have the authority to grant the zoning variance the Plaintiffs requested. Additionally, the City officials Plaintiffs contacted informed them that in order to seek accommodation, they would need to seek a variance or a change of use and new occupancy permit. Complaint Exhibit E (Doc. 1-5). Since Plaintiffs disregarded this instruction and failed to make their request to the City officials empowered to grant them relief, Plaintiffs have not made a request for reasonable accommodation. Oxford House-C v. City of St. Louis, 77 F.3d 249, 253 (8th Cir. 1996) (finding plaintiff's refusal to apply to the ZBA for a variance when instructed by a city to do so was "fatal to their reasonable accommodation claim."); see Smith & Lee Assoc., Inc. v. City of Taylor, Mich., 13 F.3d 920, 929-933 (6th Cir. 1993) (city's refusal to issue a letter of permission permitting a zoning exception was not a failure to accommodate where the city had no authority to do so).

17. As Plaintiffs have not made a request for a reasonable accommodation, they likewise cannot demonstrate the last element of a *prima facie* case of failure to accommodate: that the City refused to grant such accommodation. Kris, 594 F.Supp.3d at 353; U.S. v. Village of Palatine, III, 37 F.3d 1230, 1233 (7th Cir. 1994) (because plaintiff failed to request a special use approval, the defendant cannot be found to have failed to accommodate the request). It cannot be evidence of discrimination to show that City officials who did not have the authority to grant Plaintiffs' requests did not, indeed, grant those requests. At no time did Plaintiffs request this accommodation from the ZBA, which would have been able to assess the request, determine if it was a reasonable accommodation that was necessary in order to allow them to access housing, and grant it or other appropriate relief. Since Plaintiffs' fail to plead a *prima facie* case of failure to accommodate under the FHA, their claim must be dismissed.

18. Plaintiffs' claim regarding disparate treatment under the FHA fails for the same reasons. Complaint ¶¶27-39. To plausibly plead a claim of disparate treatment, the Plaintiffs must show:

> (1) [they are] member[s] of a protected class; (2) [they] applied for a permit and [were] qualified to receive it; (3) the permit was denied despite plaintiff[s] being qualified; and (4) the defendant approved the same type of permit for a similarly situated party during a period relatively near the time plaintiff[s]' [were] denied [their] permit.

Valentin v. Town of Natick, 633 F.Supp.3d 366, 373 (D. Mass. Sept. 27, 2022), quoting Gamble v. City of Escondido, 104 F.3d 300, 305 (9th Cir. 1997). The Plaintiffs plead they are a member of a protected class, but they do not and cannot state that they have applied for a permit or similar relief. The City made it clear that the Plaintiffs could operate their sober living home if they either sought a variance to continue as a single-family home, or a change of use and new occupancy permit to continue operating as a boarding house. Complaint Exhibit E (Doc. 1-5).

Plaintiffs elected to take neither action. Since Plaintiffs did not seek a permit, the City has not denied any request for the same, and Plaintiffs have failed to state a claim for disparate treatment.

19. Plaintiffs' claim regarding discrimination pursuant to the ADA likewise fails: since Plaintiffs did not request a reasonable accommodation from the City officials empowered to grant relief, the City could not have refused any such request, and thus has not discriminated against Plaintiffs. Similar to the FHA claim, in order to establish a claim of discrimination pursuant to the ADA, Plaintiffs must either plead direct evidence of this discrimination or establish the claim indirectly by establishing a *prima facie* case using the McDonnell Douglas framework. Katz v. City Metal Co., Inc., 87 F.3d 26 n. 2 (1st Cir. 1996), citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). As applied to this allegation of housing discrimination, Plaintiffs would need to demonstrate that they (1) have a disability within the meaning of the ADA, (2) they applied for and were otherwise qualified to function as a single-family home pursuant to the Claremont Zoning Ordinance, with or without some reasonable accommodation, (3) that despite being qualified, the City rejected this application, and (4) that other, similarly situated applications by persons not disabled were approved. See McDonnell Douglas Corp., 411 U.S. at 802.

20. Plaintiffs hinge their claim of discrimination on their allegations that the City "refused to recognize the occupancy as a 'family'" and excluded them from housing by enforcing zoning requirements. Complaint at ¶¶43-44 (Doc. 1). But the facts show that the Property was functioning as a boarding house pursuant to the Claremont Zoning Ordinance yet did not meet the requirements for lawful operation or occupancy. Complaint Exhibit A (Doc. 1-1). The City did not act to "treat the use of the Property as something other than a single-family home" – Plaintiffs simply were not qualified as a single-family home. Complaint Exhibit E (Doc. 1-5). At no time did Plaintiffs request that the City's ZBA grant the relief of treating the boarding house as a single-

family home for the purposes of zoning requirements. Had Plaintiffs done so, and the ZBA refused to allow the boarding house to be treated as a single-family home, the burden would be on the City to explain why it had made that refusal on non-discriminatory grounds. McDonnell Douglas Corp., 411 U.S. at 802-03. But absent an application and a refusal, the Plaintiffs have not sufficiently pled even indirect evidence of discrimination, and their ADA claim must be dismissed.

21. Plaintiffs also claim that the City intentionally inflicted emotional distress upon them by not granting an accommodation that they never applied for. To establish a claim for the intentional infliction of emotional distress, the Plaintiffs must show that the City "by extreme and outrageous conduct, intentionally or recklessly cause[d] severe emotional distress to [them]." Morancy v. Morancy, 134 N.H. 493, 496 (1991). This extreme conduct must "go beyond all possible bounds of decency . . . be regarded as atrocious, and [be] utterly intolerable in a civilized community." Mikell v. Sch. Admin. Unit No. 33, 158 N.H. 723, 729 (2009); see, e.g. Banks v. Hall, 2012 WL 3263607 at *1-2 (D.N.H. Aug. 9, 2012) (granting summary judgment against a plaintiff's emotional distress claim based on state troopers kicking, tasering, and setting a police dog on him).

22. The City's actions, as pled by Plaintiffs, fall well short of the sort of intolerable conduct required to support such a claim. Plaintiffs plead that the City caused this distress by "knowingly, wrongfully, and intentionally discriminating against the resident Plaintiff." Complaint at ¶46. Yet as discussed *supra*, Plaintiffs have failed to state any plausible claim for discrimination under either the FHA or ADA. Even if any of these claims were viable, the City's conduct would have fallen well short of the sort of behavior that cannot be tolerated in a civilized community. Indeed, one would hope that in a civilized society, a municipality would reasonably enforce its own laws and regulations, and those of the state. There had been multiple warnings that Plaintiffs

were operating an illegal boarding house. Complaint Exhibit A (Doc. 1-1). The Order was enforced only after proper notice, in a courteous manner, with ample opportunity and instructions for Plaintiffs to appeal and seek relief, should they choose to do so. Id. Absent any alleged extreme and outrageous behavior, then, Plaintiffs' claim of intentional infliction of emotional distress fails, and the claim must be dismissed.

WHEREFORE, Defendant respectfully requests that the Court:

A. Grant the City of Claremont's Motion to Dismiss; and

B. Grant such other and further relief as may be just and equitable.

Respectfully submitted,

City of Claremont

By its attorneys,

WADLEIGH, STARR & PETERS, P.L.L.C.

Dated: August 16, 2024

*By: /s/ Morgan G. Tanafon*

Michael J. Tierney, Esq., NH Bar #17173
Morgan G. Tanafon, Esq., NH Bar #273632
95 Market Street
Manchester, NH 03101
603-669-4140
mtierney@wadleighlaw.com
mtanafon@wadleighlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served through the Court's electronic filing system to all attorneys and other parties who have entered electronic service contracts (e-mail addresses) in this case.

*/s/__Morgan G. Tanafon________________*

Morgan G. Tanafon